United States District Court
Southern District of Texas
**ENTERED**
July 11, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY,** § § § | |
| Plaintiff, § § | |
| VS. § § | CIVIL ACTION NO. 4:22-CV-01342 |
| **KRISTI DUNN,** § § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Defendant filed a Rule 12(b)(1) Motion to Dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction. (Doc. 16.) At its June 21, 2023 hearing, the Court denied this Motion as untimely. Nevertheless, a federal court is "duty-bound to examine its subject-matter jurisdiction sua sponte." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.4 (5th Cir. 2017). *See also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[A] party does not waive the requirement [of subject-matter jurisdiction] by failing to challenge jurisdiction early in the proceedings.") The Court therefore turns to the issue of whether it retains subject-matter jurisdiction over the pending case. For the reasons discussed below, the Court finds that, as a matter of legal certainty, Plaintiff has not met the amount in controversy necessary to invoke diversity jurisdiction. The Court must conclude that it lacks subject-matter jurisdiction over the present case.

## I. BACKGROUND

Plaintiff is a trustee for a securized trust. (Doc. 1 at ¶ 4.) According to Plaintiff, Defendant executed a note and deed of trust on a principal amount of $24,168.00 with a 9.99% interest rate in 2006. *Id.* ¶¶ 8-9. In 2008, Defendant defaulted by failing to make a payment or any subsequent payments. *Id.* ¶ 14.

Plaintiff served a notice of default in 2020. *Id.* ¶ 15. Plaintiff subsequently filed an action in the 457th Judicial District Court of Montgomery County, Texas under Cause No. 20-11-13693. *Id.* ¶ 17. Its motions for summary judgment were denied by the Texas court. (Doc. 16 at ¶ 9.) In 2021, the state court dismissed the case without prejudice for failure to abide by the docket control order. *Id.*

Plaintiff now brings a substantively identical federal action for a suit on a promissory note. It alleges diversity jurisdiction, seeking $54,447.48 due on the note and attorneys' fees in excess of $25,000. (Doc. 1 at ¶ 6.) The Court considers the issue of whether the $25,000 in attorneys' fees was made in good faith, or whether it was artificially inflated to access federal courts.

## II. LEGAL STANDARDS

Federal courts are courts of limited subject-matter jurisdiction. Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [diverse parties]." 28 U.S.C. § 1332(a). "The standard for determining the amount in controversy depends on whether [Plaintiff] demanded a specific amount of damages in

her complaint." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 888 (5th Cir. 2014). "The amount stated in the complaint is itself dispositive of jurisdiction if the claim is apparently made in good faith, unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984). In other words:

> It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. . . . But if, from the face of the pleadings, it is apparent to a legal certainty that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Thus, dismissal may be appropriate "when independent facts show that the amount of damages claimed has been inflated by the plaintiff merely to secure federal court jurisdiction." Dismissal for Failure to Meet the Amount in Controversy, 14AA Fed. Prac. & Proc. Juris. § 3713 (4th ed.). *See also Thomas v. Generac Power Sys. Inc.*, No. 21-12997, 2022 WL 4091735, at *2 (11th Cir. Sept. 7, 2022) ("[T]he court may find, as a matter of fact, that the amount of claimed damages has been projected beyond the amount of a reasonable expectation of recovery, but such a finding must rest on facts in the record."). In making this determination, courts pursue an objective inquiry into the legal certainty of the pled value, rather than the plaintiff's subjective motivation. *See Jones v. Landry*, 387 F.2d 102, 104 (5th Cir. 1967) ("The test of the plaintiff's 'good faith' is not his subjective state of mind but a very strict objective standard.").

In the present case, Defendant argues that Plaintiff's pled attorneys' fees are merely pretext to get into federal court. Parties do not dispute that attorneys' fees may be included in the amount in controversy.[1] However, parties disagree over whether Plaintiff could ever be entitled to $25,000 in fees in the present case, or even the approximately $20,000 necessary to meet the $75,000 amount in controversy threshold.

### III. PLAINTIFF'S ATTORNEYS' FEES

#### A. Parties' Arguments

In her Motion to Dismiss and in the Court's subsequent motion hearing, Defendant points to four facts as evidence that the alleged fees are artificially inflated to satisfy the amount in controversy.

First, Plaintiff already filed an essentially identical case in state court. That court denied both of Plaintiff's motions for summary judgment and subsequently dismissed the case for failure to comply with the docket control order. (Docs. 16 at ¶¶ 6-7; 16-4.) This, Defendant argues, indicates that Plaintiff is engaging in forum shopping. (Doc. 16 at ¶ 9.)

---

[1] Attorneys' fees may be included in the calculation of the amount in controversy "[i]f a state statute provides for attorney's fees." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). This can include potential fees through trial. *Watson v. Provident Life & Acc. Ins. Co.*, No. CIV.A. 3:08-CV-2065-, 2009 WL 1437823, at *6 (N.D. Tex. May 22, 2009) ("[L]ower courts in this circuit have used the amount of attorney's fees the plaintiff estimated it would accrue through the end of trial in determining whether the amount in controversy was met for subject matter jurisdiction.").

Second, Plaintiff sought less than $3,000 dollars in attorneys' fees in state court. (Docs. 16 at ¶ 8; 16-2; 16-3.) According to Defendant, this evidence suggests Plaintiff's alleged attorneys' fees in federal court are artificially inflated.

Third, Plaintiff accumulated only around $6,000 thus far in the present case. (Docs. 19 at ¶ 13; 19-1.) Even with preparations for a two-day bench-trial, Defendant urges, $25,000 would be a significant overestimate. So too would the approximately $20,000 required to meet the amount in controversy.

Fourth, Plaintiff has brought similar allegations against others in federal court alleging far lower attorneys' fees where the amount due independently met the amount in controversy. (Doc. 16 at ¶¶ 20-30.) In *Wilmington Saving Fund v. Wong*, No. 4:21-CV-03005 (S.D. Tex.), Plaintiff's original complaint alleged $10,000 in attorneys' fees through trial for essentially the same facts and cause of action. In *Wilmington v. Owens*, No. 6:18-CV-0235 (W.D. Tex.), Plaintiff sought $15,000 for a case with an additional claim. These cases provide further evidence that Plaintiff's alleged fees in the present case are made in bad faith.

Plaintiff responds by seeking to distinguish *Wong* and *Owens*. (Doc. 19 at ¶¶ 7-9.) In both instances, Plaintiff argues, the cases were "not contested" and "disposed of before trial." *Id.* ¶¶ 8-9. And, Plaintiff argues, neither case involved standing issues that arose in the present case. Therefore, Plaintiff concludes, "Defendant is unable to show that Plaintiff would not have accumulated up to $30,000.00 in attorneys' fees through trial." *Id.* ¶¶ 8-9.

Plaintiff further provides fee invoices showing that, to date, it has incurred $6,037.50 in attorneys' fees in prosecuting this suit, including about 8 hours of attorneys' fees at $200 per hour in reviewing. *Id.* ¶ 13. Plaintiff attaches an affidavit declaring fees through trial would amount to up to $30,000. (Doc. 19-1.)

Finally, Plaintiff distinguishes the costs accumulated in state court from the predicted fees in federal court through trial.

### B. Analysis

The Court finds that, regardless of its subjective motivations for pursuing this case in federal court, Plaintiff could not incur either the pled $25,000 or the approximately $20,000 in attorneys' fees required to meet the amount in controversy.

On its face, $20,000 is a significant fee for a simple case on a promissory note with a two-day bench trial. Further, the Court cannot find reason to explain why Plaintiff sought two-and-a-half times the fees in the present case as it did in *Wong* just a year prior. Plaintiff's initial complaint in *Wong* is identical to the present case except that it alleges only $10,000 in attorneys' fees and a greater amount on the underlying promissory note. Plaintiff's explanations for this discrepancy have been inconsistent. Plaintiff correctly argues with respect to the present action that "estimated attorney's fees through trial are included" in the amount in controversy, even if these fees are not actually incurred. (Doc. 19 at 11.) This means that the pleadings in *Wong* and the present case should have made the same assumption—that defendant would appear and the case would proceed

through trial. But when distinguishing *Wong*, Plaintiff has focused entirely on post-pleading events, in particular the *Wong* defendant's failure to appear. Plaintiff has not provided the Court with any facts to show it would have known about this discrepancy at the time of pleading.

Finally, Plaintiff relies heavily on its affidavit alleging fees through trial would be over $30,000. (Doc. 19-1.) While Plaintiff does provide evidence of the number of hours accumulated, Plaintiff's affidavit does not detail the number of hours it expects to require through trial. The $6,000 incurred is a far cry from the $20,000 required to meet the amount in controversy.

## IV. CONCLUSION

The Court recognizes that the legal certainty test is stringent and rarely met. But attorneys' fees through trial cannot be fabricated to cover the gap between damages and the minimum amount in controversy. Based on the facts presented, and taking judicial notice of similar cases filed by Plaintiff in federal court, the Court must conclude that Plaintiff could not incur the $20,000 in attorneys' fees required to meet the amount in controversy. This case is therefore **DISMISSED WITHOUT PREJUDICE** to the underlying claims.

**IT IS SO ORDERED**.

Signed at Houston, Texas on July 10, 2023.

_____
Keith P. Ellison
United States District Judge